UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UMEME RAYSOR & RONALD STANLEY,

                Petitioners,

— against —

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------------------------------X

**MEMORANDUM and ORDER**

03-CV-5418 (SLT)(JMA)
03-CV-5606 (SLT)(JMA)

**TOWNES, United States District Judge:**

## I. BACKGROUND

On April 27, 1998, Umeme Raysor and Ronald Stanley were convicted of multiple crimes after a joint trial before the Honorable Eugene H. Nickerson in the Eastern District of New York. Raysor was convicted of racketeering, 18 U.S.C. § 1962(c); racketeering conspiracy, 18 U.S.C. § 1962(d); operating a continuing criminal enterprise, 21 U.S.C. § 848; and conspiracy to distribute and to possess with the intent to distribute cocaine base, 21 U.S.C. § 846. Stanley was convicted of two counts of racketeering, 18 U.S.C. § 1962(c); racketeering conspiracy, 18 U.S.C. § 1962(d); three counts of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1); assault in aid of racketeering, 18 U.S.C. § 1959(a)(3); conspiracy to commit murder in aid of racketeering, 18 U.S.C. § 1959(a)(5); and conspiracy to distribute and to possess with intent to distribute cocaine base, 21 U.S.C. § 846. Raysor and Stanley each received multiple life sentences. Their codefendants, Michael Sidbury and Cecil Cross, were acquitted of all charges.

Raysor and Stanley appealed, and the Second Circuit remanded for supplementation of the record with respect to the appellants' challenge to the striking of African Americans as potential jurors under *Batson v. Kentucky*, 476 U.S. 79 (1986). *United States v. Raysor*, 9 F.

App'x 33 (2d Cir. 2001). After the district court rejected the *Batson* claim, the Second Circuit affirmed the convictions and rejected the appellants' remaining claims for relief. *United States v. Raysor*, Nos. 99-1503, 99-1504, 2001 WL 36037731 (2d Cir. Apr. 29, 2001). On November 2, 2002, the Supreme Court denied the appellants' petitions for certiorari. *Raysor v. United States*, 537 U.S. 1012 (2002).

On October 20, 2003, Raysor filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. ¶ 2255, and, on October 27, 2003, Stanley filed a petition as well. Raysor and Stanley each argue that their trial counsel and appellate counsel were ineffective, Raysor challenges his continuing criminal enterprise conviction, and Stanley challenges his conspiracy convictions. The petitions have been consolidated and are herein considered jointly.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, the petitioner must show that: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Under the first prong, "[t]he court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Under the second prong, "a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 694).

The *Strickland* test applies not only to claims of ineffective assistance of trial counsel, but also to claims of ineffective assistance of appellate counsel. *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir. 1990). A petitioner may establish ineffective assistance of appellate counsel by "show[ing] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)).

1. Plea Offer

Defense counsel is required to offer the defendant advice on the question whether to plead guilty. *Purdy v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000) (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996)). "As part of this advice, counsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Id.* at 45 (citing *Cullen*, 194 F.3d at 404; *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998)) (internal citation omitted). Counsel need not, however, explicitly advise the defendant whether to plead guilty. *Id.* at 46.

To establish prejudice, the petitioner must show a reasonable probability that he would have pled guilty if he had been provided adequate advice. A petitioner may not rely solely upon self-serving, post-conviction testimony that he would have accepted the plea. *See Gordon*, 156 F.3d at 380–81. Instead, the petitioner must supplement his testimony with further objective

3

evidence. *See id.* at 381. In *Boria v. Keane*, for example, the unlikeliness of an acquittal and the disparity between the plea offer and the sentence available at trial were sufficient to establish the requisite reasonable probability. 99 F.3d 492, 494, 497 (2d Cir. 1996). The defendant, who had been caught selling cocaine to an undercover agent, rejected a one- to three-year sentence and ultimately received twenty years to life. *Id.* at 494.

Even assuming, as Raysor argues, that defense counsel failed to offer advice regarding the desirability of the twenty-nine-year plea offer, Raysor has not established a reasonable probability that he would have accepted the plea. First, the complexity of Raysor's case made it reasonable to proceed to trial. Although the evidence against Raysor was strong, Raysor's case was significantly more complex than the case against the defendant in *Boria*, who had sold cocaine to an undercover agent. *See Purdy*, 208 F.3d at 47. Raysor's trial lasted twelve weeks and involved more than fifty witnesses.[1] In fact, Raysor was ultimately acquitted of the majority of the charges against him. Raysor was convicted of four counts: racketeering, racketeering conspiracy, operating a continuing criminal enterprise, and conspiracy to distribute and to possess with intent to distribute cocaine base. He was, however, found not guilty of the following counts: conspiracy to murder in aid of racketeering; assault in aid of racketeering; three

---

[1] Moreover, at the time of the plea offer, some of the evidence ultimately used by the prosecution at trial was not yet known to defense counsel. Raysor, for instance, does not dispute that testimony of cooperating witnesses was not disclosed until shortly before the February 1998 trial. (*See* No. 96-cr-339, entry #133). Information about Raysor's involvement in one of the murders and an organizational chart of the Raysor Organization recovered from one of its store houses were similarly not disclosed until January 1998. (Discovery Letter of Jan. 5, 1998, Resp. Ex. 9). Additionally, the evidence against Raysor known to defense counsel at the time of the plea offer was not unequivocal. Although Raysor was videotaped participating in two drug transactions, the ambiguity of the tapes led the jury to acquit Raysor of the charges stemming from those transactions.

4

counts of murder in aid of racketeering; two counts of using and carrying a firearm for a violent crime; and two counts of distribution of crack cocaine. Raysor was also found not guilty of the majority of the predicate acts charged to support the racketeering count. The racketeering conviction was based on the jury's finding of guilt for the murder of Alfair Williams, Jr., conspiracy to murder Alfair Williams, Jr., and conspiracy to distribute narcotics, but Raysor was found not guilty of the following predicate acts: conspiracy to murder a person believed to be a witness against Ronald Stanley; the murder of Jamella Brown; the murder of Kimmana Reaux; the murder of Christopher Ryant; conspiracy to murder Bryan Dugan; the murder of Bryan Dugan; conspiracy to murder Alan Wayne Ramsey; the murder of Alan Wayne Ramsey; conspiracy to murder Edward Morris; and the murder of Edward Morris. (Tr. 7374–91).

Second, the substantial length of the twenty-nine-year plea offer weighs in favor of the reasonableness of proceeding to trial. Unlike in *Boria*, in which the defendant received a sentence of twenty years to life after rejecting plea offer of a one- to three-year sentence, 99 F.3d at 494, Raysor could have reasonably opted to take his chances with a trial, *see Purdy*, 208 F.3d at 47. The Second Circuit's decision in *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), does not alter this conclusion. In *Gordon*, the court held that the disparity between the plea offer and the sentencing range was sufficient to establish prejudice, where the defendant rejected an eighty-four month plea offer on the basis of defense counsel's miscalculation of the maximum possible sentence. *Id.* at 381. Defense counsel calculated the maximum sentence as 120 months, whereas the actual sentencing range was 210 to 262 months. *Id.* at 377–78. The magnitude of Raysor's plea offer suffices to distinguish his case from *Gordon* because acceptance of the twenty-nine-year offer would have resulted in incarceration for much of his adult life.

5

Stanley's claim that his trial counsel did not adequately advise him regarding his twenty-nine-year plea offer likewise fails. Stanley's habeas petition contains the one-sentence allegation that "[m]ovant's counsel failed to advise movant to accept the plea offer and/or inform movant of the government's plea" (Stanley Pet. at 5(a)), but Stanley has not submitted a memorandum of law or affidavit to support the claim. Stanley's counsel, Joel Walter, maintains that he conveyed the plea offer and advised Stanley that he was facing a life sentence, but Stanley dismissed the offer out of hand. (Walter Aff. ¶ 7). Walters paints a picture of Stanley as an uncooperative and unresponsive client who went so far as to request the submission of frivolous motions and the subornation of perjury. (Walter Aff. ¶ 4). In light of Walter's affidavit and Stanley's failure to respond, this Court does not find Stanley's allegations credible.

Nonetheless, even assuming *arguendo* that Walters rendered ineffective assistance by failing to advise Stanley adequately regarding the plea offer, Stanley has not established prejudice. As with Raysor, the complexity of the case and the substantial length of the plea offer of a twenty-nine-year sentence made it reasonable for Stanley to proceed to trial. In this regard, it is worth noting that, in fact, Stanley was ultimately acquitted of two counts of using and carrying a firearm for a violent crime and was found not guilty of three racketeering acts: conspiracy to murder Raymond Tucker; conspiracy to commit arson; and attempted arson. (Tr. 7377, 7380).

2. Raysor's Remaining Claims

The Supreme Court held in *Richardson v. United States* that "a jury in a federal criminal case brought under [21 U.S.C. § 848 for engaging in a continuing criminal enterprise] must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up

6

that 'continuing series.'" 526 U.S. 813, 815 (1999). Raysor now challenges, on the basis of *Richardson*, his appellate counsel's failure to argue that an erroneous jury charge relieved the jury of its obligation to agree unanimously with respect to each individual violation. This argument fails because, in the course of holding that the lack of a special verdict form did not constitute error, the Second Circuit specifically approved of the jury instruction. *United States v. Raysor*, Nos. 99-1503, 99-1504, 2001 WL 36037731, *5 (2d Cir. Apr. 29, 2001) ("The District Court here gave a proper instruction under *Richardson*, and there is no basis for the conclusion that *Richardson* requires that a jury be supplied with a special verdict form in order for it to arrive at a unanimous verdict regarding the individual violations."). For the same reason, Raysor may not now challenge his trial counsel's failure to object to the charge.

Raysor also challenges his appellate counsel's failure to argue that his acquittal on two of the three violations specifically charged as part of the continuing criminal enterprise should have precluded his conviction. Raysor contends that the jury was required to find him guilty of the three specifically charged offenses, instead of relying on unnamed offenses, to sustain the continuing criminal enterprise conviction. This argument fails for two reasons. First, the Second Circuit specifically approved of the district court's jury charge for the continuing criminal enterprise count. *Raysor*, 2001 WL 36037731, at *5. Second, Raysor cannot establish prejudice because the argument was raised on direct appeal in a *pro se* supplemental brief. Pro Se Supplemental Brief for Defendant-Appellant Umeme Raysor at 9–12, *Raysor*, Nos. 99-1503, 99-1504 (2d Cir. Jan. 29, 2001), *available at* 2001 WL 34120366.

Raysor also argues that his appellate counsel was ineffective for failing to argue, and his trial counsel was ineffective for failing to object, that the district court's finding of premeditation

for the murders that comprised the predicate acts of Raysor's RICO conviction raised the sentence above the statutory maximum in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Raysor cannot establish prejudice from his appellate counsel's failure to make the argument because the issue was raised in Raysor's *pro se* supplemental brief. Pro Se Supplemental Brief for Defendant-Appellant Umeme Raysor, *supra*, at 12–13. Furthermore, Raysor cannot establish prejudice with respect to the conduct of either trial or appellate counsel because the Second Circuit rejected the argument on direct appeal. Although the court did not discuss the issue separately, it stated: "The appellants raise numerous other issues on appeal. After carefully reviewing the record, we determine that each of the arguments is meritless . . . ." *Raysor*, 2001 WL 36037731, at *7.

3. Stanley's Remaining Claims

Stanley alleges that his attorney, Joel Walter, "did not investigate or present witnesses movant informed him about or investigate factual matters contained in the government's discovery materials necessary to [adequately] represent movant." (Stanley Pet. at 5). Walter responds that his investigation was hampered by Stanley's refusal to cooperate. (Walter Aff. ¶¶ 3, 8). Stanley's petition promises to provide further support later in the proceedings (Stanley Pet. at 5), but no memorandum of law or affidavit has been submitted. Stanley's failure to provide any support for or explanation of his conclusory allegations precludes relief.

Stanley also alleges that Walter slept through portions of the trial, which Walter denies. (Walter Aff. ¶¶ 3, 8). At trial, Stanley's demeanor prompted the court to ask if he was feeling well, to which he responded: "I have a hard time hearing. My ears are ringing. I can't keep my eyes open. I am not feeling well. . . . I have been lying in bed for the weekend, very, very

exhausted. I can't get out of bed." (Tr. 5997–98). Walter then told the judge that he could not continue that day. (Tr. 5998). Even assuming that Walter fell asleep briefly on that day during the trial, the brief lapse in attention due to sickness does not give rise to a right to relief. There is no indication that Walter slept for a substantial portion of the proceedings, and there is no indication that his inattention occurred at a point when Stanley's interests were at stake. *See Tippins v. Walker*, 77 F.3d 682, 685 (2d Cir. 1996).

Stanley also alleges that his appellate counsel was ineffective because he failed to investigate the allegation that trial counsel had slept through portions of the trial and failed to raise the issue on appeal. Because there is no indication that Walter slept through a substantial portion of the trial or slept when Stanley's interests were at stake, the decision of Stanley's appellate counsel not to pursue the matter does not constitute ineffective assistance, and Stanley cannot establish prejudice.

Stanley further alleges that Walter permitted his codefendant's counsel to represent Stanley while Walter was absent due to sickness, which Stanley alleges created a conflict of interest. This argument is meritless. Judge Nickerson adjourned the trial while Walter was absent, and only scheduling matters were discussed during the brief court session conducted in Walter's absence. (Tr. 6049–55). As a result, Stanley has established neither deficient representation nor prejudice.

Finally, Stanley has submitted a series of letters alleging that one of his trial attorneys, Valerie Amsterdam: 1) was under the influence of cocaine and prescription drugs during the trial; and 2) extorted money from Stanley during the trial even though she was receiving payment from the court for representing an indigent defendant. These claims, however, are time barred. The

Anti-Terrorism and Effective Death Penalty Act imposes a one year statute of limitations. 28 U.S.C. § 2255(f). The Second Circuit affirmed Stanley's conviction and sentence on April 29, 2002, and the United States Supreme Court denied certiorari on October 7, 2003, after which Stanley had one year to raise these claims. *Id.* They were not raised until Stanley filed a supplemental petition on August 19, 2005, more than ten months after the limitations period expired. The new issues cannot relate back to the original petition because they do not arise out of the same conduct, transaction, or occurrence, even though they arose during the same trial. Fed. R. Civ. P. 15(c); *Reiter v. United States*, 371 F. Supp. 2d 417, 423 (S.D.N.Y. 2005).

Stanley suggests that the drug abuse and extortion claims are timely because they were filed after criminal charges were brought against Amsterdam and she was disbarred, which Stanley characterizes as new information sufficient to delay the running of the limitations period. *See* 28 U.S.C. § 2255(f)(4). This argument fails because Stanley was aware of the alleged problems at the time of the trial. Stanley attests that he saw Amsterdam use cocaine before trial proceedings. (Stanley Letter of July 26, 2006, at 2). Stanley also alleges that, after illegally receiving $10,000 from Stanley's family in addition to her money from the court, Amsterdam threatened to withhold legal services if she was not paid more by Stanley or his family. (Stanley Letter of July 26, 2006, at 3). Because Stanley was aware of the factual basis for his claims regarding Amsterdam at the time of the trial, there exists no basis for excusing his delay in bringing the claims.

## B. Raysor's Challenge to the Continuing Criminal Enterprise Conviction

Raysor argues that his conviction on count eighteen (continuing criminal enterprise) should be vacated. The trial judge charged the jury that Raysor could be found guilty of count eighteen only if he was found guilty of at least one of counts nineteen (narcotics conspiracy), twenty (distribution of crack cocaine), and twenty-two (distribution of crack cocaine). (Tr. 7296). Raysor was acquitted of counts twenty and twenty-two but was found guilty of counts eighteen and nineteen. (Tr. 7382–83). Subsequently, on direct appeal, the Second Circuit vacated the conviction on count nineteen (narcotics conspiracy) because "[a] conviction under both the conspiracy and the CCE [continuing criminal enterprise] statutes is unconstitutional where the alleged CCE is the same enterprise as the conspiracy." *United States v. Raysor*, Nos. 99-1503, 99-1504, 2001 WL 36037731, *5 (2d Cir. Apr. 29, 2001) (quoting *United States v. Polanco*, 145 F.3d 536, 541 (2d Cir. 1998)). Raysor now argues that his continuing criminal enterprise conviction cannot stand because he has not been validly convicted of any one of counts nineteen, twenty, and twenty-two, which the jury charge represents as necessary for a conviction on count eighteen. This argument fails because the Second Circuit did not hold that the conviction on count nineteen was invalid in and of itself, but rather that the defendant could not be convicted of both counts eighteen and nineteen based on the same factual predicate. This holding does not call into question the continuing criminal enterprise conviction.

## C. Stanley's Challenge to the Conspiracy Convictions

Stanley argues that his convictions on charges of conspiracy to murder contained in counts one through eight cannot stand because his codefendant, Raysor, was acquitted. (Stanley Compl. p. 5(a), Ground 6; Stanley Letter of May 7, 2004). Although it is not entirely clear which

11

counts Stanley challenges, in an abundance of caution and in light of Stanley's *pro se* status this Court construes him to be challenging each conspiracy conviction in counts one through eight for which Raysor was acquitted: conspiracy to murder a person believed to be a witness (racketeering act 1(a)) and conspiracy to murder in aid of racketeering (count three). In neither count, however, were Stanley and Raysor the only alleged conspirators. (Tr. 7244, 7280). As a result, the acquittal of Raysor on these counts does not invalidate Stanley's convictions.

### III. CONCLUSION

For the reasons set forth above, each petitioner's petition for a writ of habeas corpus is denied. Certificates of appealability shall not issue because neither petitioner has made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112–13 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from the judgment denying the instant petitions would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York
    August 26, 2009

SANDRA L. TOWNES
United States District Judge